This case that we'll hear is Owens v. Unified, 23-3048. Thank you, Your Honor. Thank you. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. Good morning, my name is Burt Broad. I represent the appellant in this case, Sterling Owens, in his case against the Unified Government of Wyandotte County, sometimes referred to as the BPU or the Board of Public Utilities. I couldn't help but smile a little as I came into the courthouse this morning because there's a note on the door that says, if I'm recovering from COVID-19 or I've been exposed in the last several days, I wouldn't be allowed in this courthouse. If this were a year ago today, you would not let me in this courthouse. And so it had to give me a little bit of pause. I want to talk first about the standard of review. We cited four cases in our brief, Hayes, U.S. v. Meredith, Fresquez, Stroop, all for the notion that an abuse of discretion is required to reverse the trial judge in this case. None of those cases use the word gross abuse of discretion, just an abuse of discretion. I'm not sure that adding gross is redundant or not, but I think it is an abuse of discretion either way. So the Brownlow case that the BPU relies on, I think it was on an instructional error question, and I think a simple abuse, well, I say simple, an abuse of discretion would be the standard that should apply in this case. So what is an abuse of discretion? The cases that we cite talk about arbitrary, capricious, or whimsical rulings by the judge or that arise out of an error of fact. If we take that standard juxtaposed against our circumstances, we are barely into what is going to be a short trial, and we all knew it was going to be a short trial going in. Lead counsel, me, suddenly and unexpectedly is unavailable because I've tested positive for COVID-19. The second chair, Mr. Mack, had only recently been added to the case, simply going to put on a couple of witnesses, maybe assist me with some things here and there, but he had not done anything on this case until November 8th, a week before the trial. Those circumstances alone, me getting COVID-19, suddenly being removed from the case, I think meet the abuse of discretion standard. When we moved for a mistrial, as the record reflects, I notified the court immediately Tuesday night. I had COVID-19. Wednesday morning there was a motion for mistrial. That motion was denied. My young partner, Mr. Mack, not even born when Mr. Dink had started practicing law, was forced to carry on. That is arbitrary, capricious, or whimsical. But if we add that to the COVID-19 protocol, overlay that, that I wasn't allowed back in the courtroom. None of my trial team should have been allowed back in the courtroom. We had been meeting all week when I was contagious with COVID-19. Under the court's protocol, under this court's protocol, they should have been allowed back in the meeting. If you had been asymptomatic and not allowed into the courtroom, but were able to participate without symptoms through Zoom, would the district court have been required to conduct, to order a mistrial? And I'm not getting to the motion for the new trial, but when Mr. Mack asked the next morning for a mistrial, would the court have been obligated to mistrial the case? I believe so. Even though you would have been able to participate by Zoom? If I could have participated by Zoom? Because the judge offered that. So if you had been asymptomatic, were able to participate by Zoom, could the judge have, without abusing her discretion, proceeded? Let me make sure I understand. If I had been asymptomatic? Right. Okay. I believe so still because it's difficult to be speculating because if I'm asymptomatic and simply because I meet the test, let's say that I was simply exposed. You were able to do everything that you could have otherwise done except it's through a screen. Right. Right. I think it still would have been an abusive discretion. But it's a closer issue, isn't it? A closer call. And the next morning, Mr. Mack didn't say, I don't think, that Mr. Broad is too sick to participate by Zoom, that he is running a 101 fever or anything like that. That comes later when the trial is over and you and Mr. Mack move for a new trial, right? No. I believe the court was aware that I was symptomatic. I had a fever. No, she knew that. But did Mr. Mack say that Mr. Broad is too sick in order to participate by Zoom? Yes. Yes. Because after that offer was made and they even went to a different courtroom that had the capability technology to allow me to participate by Zoom, after that was made, I'm coughing constantly. I've got a fever. And we said, no, it's not possible. Mr. Broad cannot participate even by Zoom at that point. And the court was aware of that. And so if we put the circumstances, let's say, you know, instead of COVID, I had been in a car accident on my way home from the courthouse that night and for that reason was unable to participate, and therefore the rest of my team had not been exposed and that COVID protocol didn't apply. I think it still would have been an abuse of discretion because I was the lead trial counsel. I had done everything on that case up to the moment of trial and to then kind of dovetail into the next issue, which is Mr. Owens' right to the counsel of his choice. Suddenly he was deprived of that right. He had not even met Mr. Mack until the weekend before trial. And now Mr. Mack is going to put him on and present the most important part of this case. Did that happen? It did. And he put him on, and was there anything wrong with the way it was done? Well, at that point, I had been prepared to put Mr. Owens on and prepared an outline. And as an experienced trial lawyer, it was simply that, an outline. I, having been with the case for over a year. My question to you was, did your co-counsel that went forward, did he do anything wrong? Did he not present it correctly? Was there claiming malpractice? I would not say that my partner committed malpractice. Because the trial court said you're doing good, or I can't remember the exact word. Right. The question is, was the witness put on? Was it fairly presented? You know, that kind of, I think what you're asking me is, was there prejudice? Is that fair? And so this is not a simple intersectional collision case where almost trial lawyers are almost fungible. You can plug one guy in. My old senior partner, when I first started practicing law, was a city attorney. Tried a case every Monday. Was handed a file on Friday afternoon. Tried the case on Monday. Well, I'm looking at a counsel from the very standard that you said, I've got to look at an abuse of discretion. Okay. If there was anything not properly done that only you could have, that knew about and could have been done, that's one thing. But if the counsel that goes forward, your partner or whatever his position is, he presents the case fairly where people understand it. And the trial court says, I take very little comfort in the trial court saying you've done it comfortably, because that's kind of like protecting yourself. But anyway, from looking at this record, where is the abuse of discretion? Simply because you have COVID, you couldn't go forward, and therefore that was an abuse of discretion. I think that's enough. I believe that's an abuse of discretion. But let me add, though, as I was starting to say, this is not an intersectional collision case. This is a race discrimination case with no direct evidence. And so to prove, as you know from many opinions you've written on discrimination cases, plaintiff can go forward with circumstantial evidence. He can prove by nuances and various colorings of the evidence his claim for discrimination. Was that not done here? I would have to speculate that would Mr. Mack have, would I have done a better job? Absolutely. Did he do a good enough job? I don't think so, because we lost. Well, we have a record, though, that we can look at. We have a record. And to your point, Your Honor, he had my outline. He used my outline. But again, it was just an outline. And as the record indicates, his direct, Mr. Denk's cross-examination was three times longer than the direct. Mr. Denk knew a lot more about the case. He knew where to go. And there's just too many nuances in a discrimination case that you can say, here's a bunch of questions, ask them, and that's going to be sufficient. Counsel, when we write this case, we are writing for the parties and also for parties down the line. How would we write this case so that we can distinguish between the plain vanilla intersection action case and a more nuanced type of case, not limited to civil rights? Right. How do I write that? I don't think you need to write it that way. I think it gets written the same way as the other COVID cases that I've cited in my brief and that we found in between the response brief and the reply brief. I think there were four or five more cases. I think you stop right at the point where lead counsel has COVID-19 unavailable mistrial. Okay, so in a plain vanilla intersection accident case where this incident occurs during COVID, it's a reverse. I think it's a mistrial. When you take away getting to the plaintiff's right to the counsel of his choice, when you take that right away from him, whether it's an intersectional collision case or a race discrimination case or an FDA case, I think it's a mistrial. Doesn't that necessarily, if not eliminate, substantially dilute the requirement of a showing of prejudice? Again, because I think the prejudice is different in this case than say an evidentiary ruling where some piece of evidence comes in that shouldn't have and it demonstrably changes the outcome of the case. This is a harder call. I understand that. But when you suddenly are forcing a young attorney who knows little about the case to become lead counsel, I think that changes the dynamic, whether it's an intersectional collision case or a discrimination case. As I recall, your best case is that Fifth Circuit case. If that were the law in this circuit, we would have been bound by that case because that's what they did. They looked at it and they said that's a reverse. There was mistrial. Right, and I believe that this case should end in a mistrial. But that's your strongest case that you cite. The rest of them... It is. It is. I can see that, Your Honor. But at some point, and God forbid we have another pandemic and this ever happens to come up again. But I think under the circumstances here, there should have been a mistrial granted. One last point. I don't know if Mr. Dink is going to raise this or not, but I want to cover it just in case. We made the motion. It was denied. I don't think we had to renew the motion repeatedly. I think we made the record, moved for a mistrial, and that's all that was needed. I'll save the rest of it. All right. Please stop this clock if you don't mind. But I do have a question. I want to follow up. When Mr. Mock, the next day, alerts the district judge to the fact that you're sick, on page 49, he says, Good morning, Your Honor. Yes, unfortunately, at this point in time, the plaintiff would like to request the court to grant a mistrial. Mr. Broad, last night, went home. He was feeling sick at the end of the day, took a COVID test, tested positive for COVID, so he's going to be following the guidelines and is going to be quarantining at home, not going to be able to finish out this trial. Is there someplace else that he said, which you attributed to him, that you are so sick that you cannot participate by Zoom, that you are running a 101 fever, or that you're – Well, it wasn't in the trial transcript, because unfortunately there are, as you know, in trial situations, off-the-record conversations. The court was certainly well aware of the situation, and I think what is on the record is the offer of allowing us to proceed by Zoom and Mr. Mack telling the court, no, that can't happen. He's not capable. What's the time difference between the quote – That was, if I recall correctly, we had the Wednesday morning motion for mistrial. And by the way, Tuesday night I had left both an email and voicemail with the clerk of the court advising him. But Tuesday – Wednesday morning, you've got the motion for mistrial. Then there's a break, and they go check the other courtroom out, see if the Zoom capabilities are available, and then Mr. Mack comes back and says he's consulted with me. Mr. Broad can't go forward. And he also says on the next page that your fever has broken, but you're still feeling pretty crummy, a little bit better than last night. Back to Judge Baldock's question, you know, through an abusive discretion lens, you're saying that at this juncture, when your associate says that you're feeling pretty crummy, well, you know, what does that mean? I feel a little crummy a lot of days that I come into court. I may feel crummy now. But I don't know that it would be appropriate to say district court, once Mr. Mack said that Mr. Broad was feeling crummy, and even though his fever has broken, it would be unreasonable. It would be an abusive discretion, you know, to continue. We only have one more witness, the client, and Mr. Broad can ask the client questions through Zoom. He can listen to the cross-examination, and he can have a more extended redirect. Based on what little Mr. Mack said, why was that not a reasonable tact for the district court? Unless we just assume that these off-the-record conversations happen, that we can't really test for ourselves. Right, and I appreciate that. Time seems to have frozen. I was just going to say, bad news is Utah is far gone. Right. And all I can say, Your Honor, is feeling a little crummy is a bit euphemistic. I mean, it was worse than crummy. And unfortunately, that's nowhere on the record. Yeah. Okay. I did that because I didn't want to steal your rebuttal time. So thank you. We'll hear from you, fellas. I did that. That was very nice. Nice person. May it please the court. I think I want to start with the point that Judge Baldock made. I mean, what we're really looking at here is, was there prejudice to Mr. Broad's client by the fact that they were required to proceed with this trial? Notably, notice that Mr. Broad didn't identify anything that would have been done differently had he been at trial. He didn't say, I would have elicited X testimony. I would not have elicited Y testimony. I would have presented X exhibits. I would not have presented Y exhibits. He didn't do that. He acknowledged, and it's acknowledged in the trial court record, that he had an outline that he was able to confer with Mr. Mock related to the preparation for his client's testimony, which was the only witness that Mr. Mock put on. Accordingly, I think it's also important to note that Mr. Broad was permitted to listen in telephonically. The court made it abundantly clear that if there was any need for a caucus or to confer with Mr. Broad between Mr. Mack and Mr. Broad, that she would afford that. I think when we look at what would have been done differently, plaintiff can't answer that, and he didn't answer that for you. The only thing that they identify in their briefing that they say should have been done differently or would have been done differently or treated differently relates to this allegation of an anonymous complaint that initiated the ultimate residency investigation. We discussed that at length in our brief. I talked about that in my opening statement when Mr. Broad was there. He didn't object to the statements in my opening statement. The witness who testified relative to the receipt of the complaint in question, which initiated the investigation, was Tammy Torres. Mr. Broad was there for the entirety of Ms. Torres' testimony. When I brought up on cross-examination the nature of the complaint, how it came to light, the fact that Eric Clark said he had two employees come to him with a complaint and that Eric Clark brought the complaint to Ms. Torres, but that Mr. Clark advised that he didn't feel that he was free to disclose the identity of the complainants, Mr. Broad was there for all of that. He had ample opportunity to cross-examine Ms. Torres relative to that fact, and it's also important to note that in closing arguments, Mr. Mack specifically addressed that point. He addressed the point that Mr. Broad is raising, the fact that he believes, anyway, that there was inconsistency in Torres' statement that she received an anonymous complaint, and the fact that the complaints went to Eric Clark and then were passed on to Torres. So ultimately, plaintiff, in demonstrating prejudice, is unable to demonstrate that the case would have been handled in any manner different than the manner in which it was actually presented. In essence, I think Mr. Broad is saying, hey, I'm a trial lawyer. I'm the lawyer that my client hired. I wasn't able to be there for a portion of the trial. If so facto, that means my client didn't get a fair trial. And what does he say in response to your questions about prejudice? Well, we lost. Well, there are a lot of reasons that they could have lost. From the defendant's perspective, we believe they lost based on the merits, not based upon the fact that Mr. Broad was unable to examine his client or to conduct closing arguments, which he had ample opportunity to confer with Mr. Mack about. I do believe that when we look at the abuse of discretion standard relative to Judge Brattle, I think it's really important that we look at how this all developed relative to Mr. Broad reporting that he was ill. Mr. Broad reported that he was ill on the evening of the second day of trial. Mr. Mack comes in the next day, moves for mistrial. Judge Brattle then begins to probe. She asks questions. How much trial do we have left? How many more witnesses do you have? He says that he just has to conclude, Mr. Mack has to conclude the examination of Mr. Dumovic, which he was already doing, and that the only other witness was the plaintiff, Mr. Owens. Judge Brattle comments that certainly Mr. Broad must have had an outline for Mr. Owens' testimony, and that she believes that he should be able to get up to speed on that. In addition, Judge Brattle suggested, which suggestion was taken up by plaintiff's counsel, that we explore alternatives, that we explore linking in via Zoom, that we explore, ultimately, the way that Mr. Broad did connect with the proceedings, him participating telephonically, and she commented again that he would be given every opportunity to participate and to confer with his counsel to make sure that he was getting effective representation. Judge Brattle went out of her way to make sure that, even in light of this unfortunate situation with Mr. Broad, that Mr. Owens was going to get effective representation. So, after we broke to explore alternative means to allow Mr. Broad to participate, including changing courtrooms where they had Zoom capabilities, Mr. Mack, presumably, after conferring with Mr. Broad, after conferring with his client, Mr. Owens, comes back and says they're ready to proceed. So, when Mr. Broad is saying that his client didn't get the counsel of his choice, well, certainly, Mr. Owens had opportunity to confer with Mr. Broad and Mr. Mack, and they made the decision to proceed with the trial. So, Mr. Owens certainly made a decision to proceed with the trial with Mr. Mack as his counsel. Additionally, as to his point that Mr. Owens didn't have the counsel of his choice, well, Mr. Mack entered his appearance more than a month before trial. Presumably, Mr. Mack didn't do that without having the consent of Mr. Owens. Mr. Owens consented to Mr. Mack acting as his counsel. Additionally, on the following day, Mr. Mack indicated at the end of the third day of trial that he wanted to potentially revisit the issue of moving for mistrial. Then, on the morning of the fourth day of trial, again, they indicated that they were ready to proceed with the case. So, all of that, when you look at it from Judge Vratil's position, they never pushed forward after making that initial motion for mistrial. They never pushed her for a ruling. When we explored alternative means for mistrial... What do you mean that they didn't push her for a ruling? She ruled. I'm not sure I follow you. She never ruled on the motion for mistrial. She said there was a discussion about alternative means and there was a discussion about how much time was left in terms of... So, there was a motion for a mistrial and she never ruled on it? She never ruled on it. How in the world are we applying an abusive discretion standard to a ruling that was never made? Well, because the plaintiff came back after the break and advised that they were ready to proceed. I get that, but we typically don't defer to things that didn't happen. We don't apply... I'm not sure that I've ever seen a case where we applied the abusive discretion to a ruling that did not exist. So, maybe we ought to apply to no full review if Judge Vratil never ruled on it. Well, I mean... How can we do otherwise? I'm not sure I follow. Well, I mean, they made a statement that they were moving for mistrial, but they effectively abandoned that motion. So, they withdrew it? I believe they abandoned it by their position that they said they were ready to proceed. So, in a sense, you're agreeing with Judge Vratil. There's nothing here. There was no ruling to appeal. The motion was withdrawn. That's my position. By them saying that they were ready to proceed and by the fact that they, in fact, proceeded without awaiting a ruling from her, I believe 100% they did not push the issue. In your briefing, did you ever argue to us that the plaintiff has abandoned his argument for the denial of a mistrial? Yes, we argued specifically that they did not preserve a motion for mistrial. That's different than saying, you know, they forfeited an argument, I didn't preserve it, as opposed to affirmatively abandoning it. I'm not sure I agree with you. But by the fact that they moved for mistrial and then came back and said, we're ready to proceed, Your Honor, to me, that is an abandonment of that motion. Well, I understand, but Judge Bacarach's question is, did you say that in your briefing? You said something a little different. That is, they should have renewed the motion. I said that they didn't preserve it by their course of conduct. Well, be that as it may, the question to me is, you're telling us that the trial court never ruled on the motion for mistrial. I'll look at the record myself, but that's your affirmative statement to us. Correct. So the question then becomes, and I'll ask this opposing counsel, just like what Judge Bacarach is saying, we're being asked now to rule on something that there was never a ruling on. I think the record bears that out. Well, assuming that you don't prevail on that, if we were a panel in the Fifth Circuit, would we have to reverse? No. That Fifth Circuit case involved a very different situation. That was a case where there was local counsel that was involved. The primary counsel in the case became ill. Let me find my notes on this. You're referring to the Smith-Wike Machinery Corp case. Notably, in that case, first off, it occurred back in 1970. There was no remote participation that was possible. Can I tell you from experience? Old is sometimes good. Not the old man. I will additionally say that the facts of the involvement of the local counsel in that case, from the record in the Fifth Circuit, are materially different from Mr. Mach's participation in this case. He was strictly there in a local counsel perspective. He had no knowledge of the case, according to the court record. To build up a knowledge of the case, he had to fly down to Tulsa to confer with the primary counsel. That was not the case here. Mr. Mach was involved. He'd taken witnesses. He'd entered his appearance more than a month before. That is a materially different situation. I would additionally note that in that case, one of the things that the court offered, or that was requested and denied, was an extension to allow for co-counsel to get up to speed. The plaintiff never requested that in this case. The Fifth Circuit, the district court judge in that case, even denied an extension to allow the co-counsel to get up to speed. Mr. Mach never requested an extension, whether it be a day or two or a week, to get up to speed on the case. I think that case is distinctly different from this case. Just a couple of final points. Mr. Browd brought up the fact that COVID-19 protocols shouldn't have allowed his trial team into the court. Kind of a moot point. They were allowed. They did participate. I'm not sure that that demonstrates an abuse of discretion. I do not agree with Mr. Browd that Mr. Mach advised the court of the nature and extent of his illness, other than what you've seen on the record. I was there for the off-the-record conversations. The first reference I ever saw to the nature and extent of Mr. Browd's illness was in the post-trial motion in the affidavit. So with that, I seem about out of time, unless there are any additional questions. Thank you. Thank you. May it please the court, just a couple of comments. First, the evidentiary issues that Mr. Dink referred to regarding who made the complaint. Mr. Dink made it clear when he addressed the jury that it was an African-American. And there was a clear implication there that whether it was an anonymous or not, why say it was an African-American unless he had an intent to plant that seed. There are lots of assumptions he's making about what happened off the record. I think if you look at the transcript, what you'll see is that Mr. Mach moves from this trial. Judge Rattle has some discussion and then says, here's how we're going to proceed. And that is as good of a ruling, unfortunately, as we see on the record. But what Judge Rattle never asked was. When was that statement made? Was it after Ms. Brock said we're ready to proceed? I believe that excerpt is in the BPU's brief, that entire colloquy. And it is all part of that same conversation, if I'm not mistaken. So she's saying, this is how we're going to proceed in the context of him saying we're ready to go. Well, that came afterwards because. Afterward, but in the same discussion and hearing. I believe that was after they had looked at the other courtroom. Okay. But it's all part of this process about what we're going to do. There's a pending motion for a new trial. And then he says we're ready to proceed. Well, no, she's thinking about alternatives. Right. And she doesn't say we're ready to proceed until after he says we're ready to go. Does she? No, no, I think that's incorrect. I think Mr. Mac only says we're ready to proceed after he's been told we are going to proceed this way. Yes. Okay. So it's not a question of, you know, when we walk into the courtroom this morning and the clerk says, everybody ready to go, we all say, yes. It's not that we want to necessarily, or that there's been a motion that's been overruled. He was just acknowledging by that point. Yes. But the judge never asked, can you proceed? And to Mr. Denk's comment about Mr. Owens, she never asked Mr. Owens, do you want to proceed with Mr. Mac? That question was never posed. Thank you. So.